Could the clerk call the next case please? 30908AO Robert T. Renchen, athlete by Roger Elliott v. Thomas Renchen, et al. Appellants by Tony Grazian. Mr. Grazian, good afternoon. Please record. I just lost my co-counsel, so when he walks in, Mr. Takos here. Also on behalf of the appellants. If you just want to take a little break. I'm sure you're aware, it's kind of an interesting probate case. If you've had the opportunity to review the facts, it's kind of a complex factual case. But I think it's our opinion that it's actually a simple legal case. And the question that was certified in this case is concerns an adoption decree. An adoption decree that was entered was never challenged until 20-some odd years, actually longer than that, probably over almost 40 years later in a probate court, in a probate court proceeding. Again, the facts in this case are somewhat interesting. And we get, just like the case before us, I know it wasn't your panel, but maybe it was referred to, there was a Robert R. Renchen who was the deceased in this case. And there's a Robert Todd Renchen who is the person who has filed the petition to establish parentage that Robert R. was his father rather than Gary York and William Renchen. But Robert R. died in 2007, Robert R. Renchen. Shortly thereafter, Robert Todd Renchen files the petition. We file, our clients, the other Renchen family, the mother and two brothers, file petitions also. Then there's motions for summary judgment. There's a lot of motions that get filed, but it basically boils down to the two motions for summary judgment and a motion for involuntary dismissal. But as the facts go on, we find that there's Robert Todd, who I refer to as Todd, he was born of Gary and Judith York. Gary and Judith York, as the affidavit and the evidence shows, were married. They were married at the time that, well before Todd was conceived. So there's no doubt that, according to law, that he would have been, Todd would have been the son of Gary and Judith York. Gary and Judith York end up getting divorced, and as luck would have it, Judith then remarries William Renchen, who is the deceased brother. William and Judith then adopt Todd. That adoption takes place back in February of 1973. That adoption made a finding that the father of Todd Renchen, Robert Todd Renchen, was Gary York. That finding's never been challenged up until this case. It was never challenged after the adoption. Not only was there a finding that the father was Gary York, Robert Todd Renchen was also at that time represented by an attorney. And again, after he turned 18, there was never anything filed by Robert Todd Renchen  So it's really, the issue that was certified is whether the finding of paternity in the decree, and we kind of get, and it's confusing, and I'm not quite sure what the thought process is going to be by this panel, but you have the Paternity Act, you have the Adoption Act, and then you have the Probate Act. You somewhat get involved in the Paternity Act, and there's all different kinds of statute limitations, but if you go, there's never anything filed concerning paternity. There was never any challenge to the Adoption Act, and those statutes had well been passed, and the question then is whether that decree of adoption and finding of paternity is controlling over a subsequent probate estate. And it's our feeling that when you look at the evidence, and Judge Winselman, in his order, found that somehow, and I'm not quite sure because he didn't elaborate on what that was, that there appeared to be maybe some questions of fact that would stop the motion for summary of judgment that was filed by our clients, the appellants, to be granted. But really when you look at it, it's hard to fathom what factual disputes there would be. Well, you answered me this one. What do you rely on as a bar? What statute do you rely on as a bar to Todd coming in and trying to establish parenthood? Adoption Act. Pardon? The Adoption Act statute, one of the paternity statutes. What provision does the Adoption Act, what statute limitations does it have? One year. Pardon? One year. I think that's 750 ILCS 5011A. The Parenthood Act is 458A1, which is two years. And there's no doubt that there was, unless, and he does talk about in his order that there was any stay, that there wouldn't, there would be no stay that you could reasonably argue, and I can't, as you look at this case, factually there just is no stay. There was an adoption. There was a representative for the minor at the adoption. Numerous years have passed since the adoption, never any right to, never any challenge to the adoption. What do we do with Section 8C of the Parenthood Act, though? About that it's not a bar to any rights to be served in a probate act? And we don't read that the way that you might think that at first you read that. You have to look at, and that's where Tercevich comes in, the case of Tercevich. It was cited by Mr. Elliott as the appellee, and we also cite it in our reply brief. That case stands for the proposition that if you have no acknowledgement, which we did not have in this case, there was no acknowledgement of paternity ever. There's never been any indication, any inclination, any evidence that there was any acknowledgement. As long as there's not an acknowledgement, that case stands for the proposition, this is a Supreme Court case, stands for the proposition that the Paternity Act statute of limitations does apply. The, so as a matter of statutory construction, wouldn't it appear that, I mean it just says this does not affect the time limits or the determination of airships. And in essence, that's what we've got here is Todd arguing that he's an heir. Yes, and the difference there is that he's a, he can argue all he wants, but he's not an acknowledged heir. And see, the problem with that is, is think this through. If, and I don't know that the record even shows why Todd at some point in time thought that Robert R. was his father, but say that nobody told Todd. And that this case, the probate case went on, it was concluded, and 20 years later Judith, on her deathbed, decides that she's going to tell, tell Todd, you know what, really Robert R. was your, was your father. I just feel like I have to tell you that now. So does he then, at that point in time, get to come back and file some petition to reopen the probate estate, then to argue that he's the father, and then the assets have already been distributed? How would you resolve that? Well, you wouldn't under this statute because the probate action would already be closed. And I think you'd have another statute there, wouldn't you? You'd deal with the closing, the finality of the probate action. But here you've got a live probate action, and you've got the Parentage Act that says, these time limitations don't apply to determining airships in a probate action. Yeah, and if you, and I understand what you're saying, and that certainly is an argument. But the other argument is, is if the statute says what you think that it says, then you, the fact that the probate act, the probate case is closed, he could always argue that I had no way of knowing that, I had no knowledge of this, nobody told me, there was fraud, blah, blah, blah. You argue, make all those arguments, this thing never stops. And there's got to be some finality to it. Well, those cases come up all the time, don't they? In probate actions, somebody's saying to you, I didn't know in probate actions are pretty difficult to reopen once they're closed and everything's distributed. That's pretty much the end of the line unless you prove fraud on somebody. Can I tell you one thing? Sure. Adoptions are even harder to overturn and to come in unchallenged. And that's what we have in this case. And that's why Judge Wenzelman was wrong in denying our most presumptive judgment, because you have to have some finality in these cases. You have to read all these statutes together, together along with the case law, and I don't think that when you do all that that there's any doubt that this decree of adoption should have been dispositive. We're all, we have discussed this. I mean, this case is very, very interesting. When I think of it, Robert R., I don't know that Judith has ever told Robert R. he's the father of this child. His parental rights, biological parental rights, have never been terminated or surrendered by the deceased. So the question is, does the adoption extinguish the parental right to provide for your child after you adopt? By inheritance? I mean, he's never disowned this child. Well, he's never, well, no, because he never acknowledged that he had a child. We don't know whether he knew. Yeah, and we don't, we don't know whether he is the father. I mean, that's the whole thing. We don't know, but we're, 30-some years later we're trying to litigate this when we've already had ample opportunities to bring this up. Certainly the adoptive father, William, had the right to make parental decisions, but I'm not certain that that right to make parental decisions by virtue of the adoption extinguishes the right to inherit from somebody who's your biological father, who has never disinherited you. Let me carry that a step farther. What if Todd is, nothing ever happens, Todd ends up to be the next Michael Jackson, he's worth the $16 billion, and then Robert's still alive and Robert comes back and says, I'm really his father. And then Todd dies and he comes back in the estate and says, I want part of that estate because I'm his father. And he's never done anything. It's all the same type of argument. Well, in that case, I guess the Adoption Act, well, the Adoption Act says he's got until the kid's, what, 18? A parent, I mean, with respect, excluding the business of the registry, and the Supreme Court is pretty willing to forget the registry these days. And the father has, I think they said in GSA, until the kid's 18 to come in and say, that's my boy. And notwithstanding prior, you know, years of prior knowledge that that was his son. But, so then, okay, I see you're just doing the confidence here, but you're saying that that statute wouldn't apply and he can still come in under this thing and say, hey, that was, of course, the thing of it is, if fathers generally don't inherit, I mean, if their sons have other spouses or kids and things like that, daddy's not going to inherit anything. Yeah, but that's true. But if we want to carry this to this logical conclusion that Todd dies, has no children, has $20 million in the bank, and then Robert says, gee, I'd like part of that $20 million, I think I'm his father, so he files something, and we could be 40 years again later on the other side, and there's no end to this. And I think that the law requires. Well, if Todd's got no descendants, if Todd's got no descendants, so what? If the dad comes in and he can prove it that he's his father, you know. Well, he would have, I think, his son. You're saying he has no family, no kids? No. Well, his mother could be. His uncles, there's all. Just because we have in this case. Yeah. You know, so when we. Not to interrupt, but pinpointing it to the question that we've been certified to answer, it says, is the paternity decision rendered during the course of a decree of adoption, does it control? The answer is maybe, isn't it? Because we have a statute right on point at 755 ILCS 5-2-4 subsection 1 that says, if you fall within this category and the adoptive father happens to be a descendant or spouse of a descendant of the great-grandparent, then this person is a child. Well, if you forget tercivates, you maybe could somewhat make that argument, but I don't think that's what the law that I think we should follow. I think that's when you have an acknowledgment. First off, there's no presumption here of paternity. And then another reason why you want to end these things is we could be going on and on and on. Who knows how much. And you talk about this. I don't think it's a valid reason, but it's somewhat valid. It's a fact that it should be considered. These cases will just keep going on and on and on. There's not going to be an end to this. Somebody else could come up and claim that they're in error. You don't know. But tercivates very specifically says that the Parenting Act applies unless there's an acknowledgment. No acknowledgment here. The parentage was never challenged. That was found in the adoption decree. The adoption decree was never challenged. And I don't think you can bootstrap your way around by going even though there is a statute that talks about that, but it's not on point under the unique factual circumstance that we have here. We're not allowed to consider the unique factual circumstances based on the question asserted. There's no facts included in the question. Yeah. Well, the facts are in the document. I'm not quite sure what you're talking about, but we have the facts of the adoption is not disputed. The facts that there was a finding of parentage is not disputed.  Correct. Never a challenge. But our job here is all we can do is answer the question. Correct. Thank you. Thank you, Mr. Grayson. Mr. Elliott, good afternoon. I want to start by saying I'm excited because some of the issues you raised, I think, are really the issues in this case. Surprisingly enough, there are many things that Mr. Brazel and I agree upon. We've discussed this case in other than our law offices, and we can tell you that we believe and we agree that there are probably two good bar exam questions that are going to come out of your ruling. That there's one bestseller novel and probably a miniseries, too. The facts in this case are really... There's no twins involved here or anything like that, is there? Thank God, no. Okay, thank you. That's just a negative in the back of my mind. Just time. But the real issue is one that Justice Smith was moving towards when he was discussing it with Mr. Brazel. If you take the question that's been presented to you and modify it just a little, it really brings things into focus. If it read, is the finding of paternity in a degree of adoption dispositive of the paternity of an adopted child when no motion to vacate was timely filed in the adoption case, and when thereafter a petition to establish airship was filed in a probate proceeding? Because airship's the issue here. I want to make it clear. We're not trying to undo the adoption. We're not trying to do that. We can't. It's not an issue. But airship is the issue. And other things that we agree upon is that both the adopted father, Williams, and the decedent, Robert, were brothers. They had the same father. We agree on that. And they had the same grandfather. So if airship is established on Todd's behalf, then under the statutory set that we used, 755 ILCS 5-2-4D1, he's an heir. And that's the issue here. He's not an heir. He's a natural child. A natural child then becomes an heir. I'm sorry. You're right. And that's important there. But I want to make it clear. We're not attempting to, as Zaev suggested, unadopt. That stands. He's a natural child, but it doesn't necessarily say that Robert R. is his father. That is correct. And, in fact, if you read the statute, the probate act, the statute we provided, he would actually inherit or theoretically inherit from both his natural father and his adopted father. The more I thought about it, the more I believed that the legislature, when they established this portion of the probate act, was thinking about related adoptions because there are quite a few related adoptions today. And this would give the adopted child, permit him to be the heir of his natural parents if they're established and of the adopted parents. And in this case, we have the natural uncle who becomes the adopted father and the natural father who becomes the adopted uncle. But they're in the same alignment. But the issue clearly is heirship. If that is the issue, then why did Todd file a petition to determine paternity? To establish paternity. One of the reasons that you mentioned or touched on, and no one seems to have the answer, whether Robert R. Renton actually knew he was the father, whether the natural mother knew or thought he was the father. I mean, this is an incredible situation here. Can't you decide whether they both share a common great-grandfather without determining paternity? I don't think you can. In the legal sense of the word? I don't think you can, Judge. All right. Well, there are members of this court working with me. We have debated and debated and debated, much like you and Cook have your ruling. From a personal aspect, when I first got involved in this case and went through the facts, I went, no, I'm tired, I read this wrong, I put it away. I came back the next day and went through everything. This is absolutely incredible. I can't believe it. And so that's where we are today. But ultimately, and this isn't a done deal, and one of the things that Justice Smith talked about I think is important. That is, if the paternity is established in the DNA, then we go to the Probate Act. If it turns out that that's never prevented in evidence or if it's incorrect or cannot be supported, we're out of the box. That's it. So what do you do with Tersevich? I think Tersevich helps me. I think it covers basically the same issues we're talking about here. In Tersevich, I think there was an acknowledgment that the father acknowledged that the child was his child, and that came into play there. In this case, we don't know if he ever knew that he was the father of the child. But doesn't the case stand for the proposition that there has to be an acknowledgment? No, I don't think it does at all. Really? I don't believe that's the case. Now, one of the things we're dealing with, in my opinion, is we're in 2010 when we had DNA and scientific analysis that wasn't available in some of the other cases. In fact, there's an earlier case, Tablowski, I think, I can't remember it offhand, where it was in the 40s, and they took an approach that was similar to what we're talking about here without any DNA results. But the issue with airship, it's not adoption, and that's what governs what ultimately happens. So, thank you. If we're going to use DNA, doesn't there have to be a change in the law? No, I don't think there has to be a change in the law. One of the things that you mentioned, you're going to have several situations. You're going to have some people that are going to acknowledge a child. I know this is my child. It looks like me. It's got my ears, whatever. And there are some people that are going to dispute it. We'll go into court on the Parentage Act. You can order a DNA test and so forth. So, DNA would not always be dispositive, and the fact that you acknowledge it wouldn't always be dispositive. I had a case where a gentleman believed he was the father, and the DNA test proved otherwise, and it crushed him because he had bonded with the child. In fact, he committed suicide. So, you can acknowledge a child as your own and not necessarily have that child. It may turn out that child isn't your own. So, DNA will come into play a lot. If you acknowledge it and everyone accepts that acknowledgement, then that would govern, too, I think. Help me out. If the question certified was, is the finding of paternity in a decree of adoption dispositive of heirship of the adopted child, the question could be answered one way. Yes. And if the question read, is the finding of paternity in a decree of adoption dispositive of the paternity of the adopted child, then the question could be answered differently. So, the outcome of this appeal may depend on the wording of the certified question. That's correct. Do you and counsel agree on the wording of the certified question? No. I really think it should be. That's why I mentioned when the thereafter petition to establish heirship was filed in the probate court. Because as you have all acknowledged, it can become an issue. The adoption act, the parentage act don't come into play in the probate act. You can't change the certified question after you get here. I'm not trying to change it. I'm stuck with what we got, Judge. And our answer is determined by the question that we have. I understand. Okay. Are there any other questions? Let me just ask you. In essence, what we're talking here is a claim against the estate. That's correct. I mean, listen, I realize we're talking about the death of somebody and parentage and all this. But at the end of the day, we're talking about money. Somebody is making a claim against the estate. Right. And it will either be proven or, assuming that the question gets answered the way you want it to be, then that claim will either be proven or it won't be proven. I'd like to address that because I think there are actually two things that happen here. There's a basic human need to know who you are. And so the paternity case becomes important. But you're right. There's also a potential monetary factor. And the appliance raised that a couple times in their brief and their reply. But if you look at the record, there's two petitions for administration. In one, the one we filed, it asks what the personal property is, what the real property is, and the annual income from rents. And our response is unknown because we don't know. In their petition, it indicates $150,000 in personal property, some land with an asterisk there. And in their reply brief, they talk about stock and a trust and so forth. If we are appointed administrator, then obviously these are things we're going to have to find out. But to assume or to assert that there's this big windfall really isn't supported by anything. We don't know. Thank you, Mr. Elliott. Thank you, Justice. Mr. Bresl and then Mr. Bottle. A couple of interesting issues. It is basically. I guess you could couch it in those terms. It's a claim against the estate. It's money. But when I brought that up, Mr. Rallier took issue with that in my brief. But which it is. I mean, let's don't kid anybody. This is about money. Well, and your point is if we let this happen. Well, I mean, that's what a probate action is. Here's, you know, the seat was dead. We're going to wrap up this estate. Let all come who say the estate owes them money. People come in. And sometimes you get good claims. Sometimes you get bad ones. But the probate action is where those claims are heard. But if there's a case that's barred by statute of limitations, it's a relatively easy procedure. It's not a complicated procedure. That's what we're trying to do. A couple of things that I heard Mr. Elliott mention. And we have talked about this. It's a fascinating case. But number one, he said he's not trying to undo the adoption. And he can say all that. He can say that all day. But that's just not what he's trying to do. It reminds me of a refusal case I tried many years ago that didn't come to this court. And it was a refusal. When refusals were just in the early 80s, they were just starting to statutory summary suspensions were just starting. And people would refuse the test. You didn't have real severe sanctions back then. But we had a local accountant who said, I refuse to refuse. And the judge at the trial court level, Iowa State's attorney, he threw out the suspension. So we appealed it. And the court comes back that the court, unlike the trial judge, is not confused by Hatter-like language. That's what we're hearing here today is Hatter-like language. He's just telling us things. Certainly he's trying to undo the adoption. Because if the adoption's valid, then he should have appealed it or he should have filed a motion to vacate it. He should have done something. I'm talking about Todd. A long time ago, he maybe should have even tried that first before he goes to the probate proceeding. He hasn't done that. But doesn't that argument fly in the face of the language that the legislature said this kid can adopt, can inherit from both his natural father and his adoptive father? And we talked about that earlier. But that's my argument. It's the same on that. That's when you get to Tercevich. And you've got to totally ignore Tercevich to get to that argument. And I disagree with counsel. I don't think there's any other way. I'm looking at the last paragraph of Tercevich, and it says, therefore, comma, parentage is not an issue, and the limitations period of the parentage act does not apply. I don't know how you can read that any other way. Well, you can't. But you've got to look at the facts of Tercevich. But Tercevich said there was an acknowledgment. They didn't say what happens when there isn't an acknowledgment. They said it's acknowledged. We've got an acknowledgment here. We don't have to even worry about parentage. They didn't address the issue if there wasn't an acknowledgment. So I don't know how you can make the jump to conclusion because they said this is what happens when there is an acknowledgment. It doesn't even address what happens when there is no acknowledgment. Well, really, it's not the way I read that case. I think if you read it, you read where it says the date, and it's the third paragraph in the end. Almost five years after the statute of limitations of the Parenting Act would have barred any action. So they say that, and then they follow that up with if parentage is not an issue, the limitation period of the Parenting Act does not apply. You put those two sentences together, you can't come up with any conclusion except that the Parenting Act, Parentage Act, applies if there's no acknowledgment. But including Section 8C? Absolutely. And 8C says this doesn't apply in probate proceedings for airships. And I agree that the statute says that, but you've got to read it with the case law and the facts and the adoption. Almost every case that you find deals with illegitimate children, and that's not the case or the facts we have in this case. This is a child, Todd, was born in the marriage of Gary and Judith York. And you have that presumption right there. It's law that it's their child by law. Counselor, do you have one minute? Have you read JSA? I know what you're talking about. But there's just so many things that happen here with the parenting, the adoption act. I just, I don't think there's any way to read. I understand the Probate Act, but I don't think when you read that in conjunction with Tercevich, which is about the only case that really is somewhat on point about this. I don't know how you can reach any other conclusion except that it's a bar to Robert Todd Rinchin to filing the petitions that he's filed. And the motion for summary judgment should have been granted. Thank you. Thank you. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible.